SALANS

620 Fifth Avenue

New York, NY 10020

Claude D. Montgomery (CM 9664)

Lee P. Whidden (LW 1649)

Paul C. Gunther (PG 3023)

(212) 632-5500

*Attorneys for all Defendants except Rosalie*
  *Erickson individually and as representative of*
  *The Estate of Max Kassover*

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>　　　　LAWRENCE KASSOVER,<br><br>　　　　　　　　　　　　　　Debtor. | CHAPTER 11<br><br>Case No. 98-43124 |
| RUTH KASSOVER, as co-executor of THE ESTATE OF NATHAN KASSOVER, and PHILIP KASSOVER, in his individual capacity,<br><br>　　　　　　　　Plaintiffs<br><br>　　　　　　- against –<br><br>PRISM VENTURE PARTNERS, LLC, PVP-GCC HOLDINGCO II, LLC, THE GARDEN CITY COMPANY, INC., RICHARD SABELLA, ROSALIE ERICKSON, in her individual capacity and as personal representative of THE ESTATE OF MAX KASSOVER, RICHARD BAIME, LULU KASSOVER, HARRIETTE K. BAIME, LLC, MORTON KASSOVER, HARRIETTE K. BAIME and MORTON KASSOVER as executors of THE ESTATE OF SAMUEL KASSOVER, SLOBODIEN FAMILY PARTNERSHIP, LP AND R. PEYTON GIBSON,<br><br>　　　　　　　　Defendants. | Adv. Pro. No. 05-02437 |

## MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

In support of their opposition to Plaintiffs' Motion to Remand this action to the New York State Supreme Court, New York County, Defendants Prism Venture Partners, LLC, ("Prism"), PVP-GCC HoldingCo II, LLC., The Garden City Company, Inc. ("Garden City"), Richard Sabella ("Sabella"), Richard Baime, Lulu Kassover, Harriette K. Baime, LLC, Morton Kassover, Harriette K. Baime and Morton Kassover as executors of The Estate of Samuel Kassover, Slobodien Family Partnership, LP and R. Peyton Gibson, the Liquidating Trustee (the "Liquidating Trustee" or "Trustee") for the Chapter 11 estate of Lawrence Kassover (the "Debtor"), by their counsel, Salans, hereby allege as follows:

## PRELIMINARY STATEMENT

1.       Remand to State Court is improper because the Plaintiffs' action belongs in the Bankruptcy Court.  Plaintiffs seek declaratory and injunctive relief and damages against Defendants for the alleged failure of the Liquidating Trustee to make distributions in accordance with a Bankruptcy Court-authorized Merger Agreement (as defined below), which provided funding for Lawrence Kassover's confirmed Plan of Reorganization, and purported misrepresentations made in connection with the Plan confirmation.  The disposition of Garden City and its merger into Prism (the "Merger"), which form the bulk of the factual allegations in Plaintiffs' Complaint were the subject of final orders of this Court.  As such, the Plaintiffs Complaint (originally filed in state court) is an impermissible collateral attack on this Court's final Merger Order, the Plan and the Confirmation Order (as defined below) and goes to the heart of the bankruptcy proceedings.  The claims asserted must, therefore, be adjudicated by this Court.  *See In re Chateaugay Corp.*, 213 B.R. 633, 637 (S.D.N.Y. 1997).

2.       Over three years ago the Liquidating Trustee commenced an adversary proceeding, pending in this Court, in which she alleges several causes of action against Plaintiff Philip Kassover ("Philip Kassover" or "Philip") arising from his tortious conduct in connection

with the management, marketing and disposition of Garden City.  In 2004, the Liquidating

Trustee moved to amend her complaint to request a declaration that she has no liability to

Plaintiffs for additional distributions, absent the occurrence of certain of conditions.  The

successor company to Garden City, also named Garden City, has moved to intervene in the

adversary proceeding.  Both motions have not yet been decided, pending the results of

mediation.

        3.     The present Complaint was filed by Plaintiffs in state court subsequent to

mediation and was removed to this Court.  Plaintiffs have moved to remand.  Remand is

improper because this Court possesses core jurisdiction over Plaintiffs' claims.  The adjudication

of these claims will require the interpretation of and the determination of the parties' rights under

the Merger Order approving the disposition of Garden City, the Merger Agreement, the Stock

Purchase Agreement as well as the Plan of Reorganization confirmed by this Court.  It is

indisputable that a bankruptcy court has core jurisdiction to interpret its own orders.

        4.     This Court also has core jurisdiction over Plaintiffs' action because the

Complaint implicates the Liquidating Trustee's administration of the Debtor's estate.  This

Court's adjudication of Plaintiffs' Complaint will prevent the waste of estate resources that

would result if the Liquidating Trustee were required to litigate two actions seeking to resolve

the identical question – how much Plaintiffs are owed pursuant to the Settlement and Merger

Order and the related Bankruptcy Court-approved agreements.  State Court adjudication of

Plaintiffs' Complaint would also raise the unnecessary and wholly-unwarranted risk that

conflicting decisions will issue conflicting rulings.  Finally, any State Court decision would

likely have *collateral estoppel* and *res judicata* effect on the Bankruptcy Court proceeding, and

thus would effectively strip the Bankruptcy Court of its jurisdiction over its own prior orders,

- 3 -

and the Liquidating Trustee's adversary proceeding, which was commenced consistent with plan

provisions, and this Court's retention of jurisdiction under the Debtor's Plan of Reorganization.

The Plaintiffs' position is similar to the position taken by plaintiffs in *In re Chateaugay Corp.*,

201 B.R. 48, 62 (Bankr. S.D.N.Y. 1992) (Lifland, J.).  Similar efforts to collaterally attack a

bankruptcy court's orders were properly rejected by this Court and the District Court.  *See In re

Chateaugay Corp.*, 213 B.R. 633, 637 (S.D.N.Y. 1997)  Accordingly, the Plaintiffs Motion must

be denied.

## STATEMENT OF FACTS

5.      The Debtor owned a 5.6% share in Garden City, a Kassover family-owned

commercial real property management company.  Over the years certain Kassover family

members entered into a series of shareholder agreements originally designed to preserve the

corporate ownership within the four family groups and to assure that each group shared equally

in the company's ownership and operation.  The most recent of these agreements was a July

1976 agreement (the "Shareholders Agreement"), which has since been declared null and void by

the Bankruptcy Court.

6.      After obtaining appointment as a director in 1996, Philip Kassover

developed a practice of operating outside Garden City's regular management structure and

effectively impeded the remaining board members from operating Garden City.  Philip became

the Company's *de facto* chief executive officer in 1996 by usurping control of the Company's

day-to-day operations.  As a consequence, until the Merger, Philip alone controlled all of Garden

City's employees, who would take no action without his approval.

7.      In the years preceding the Merger, Philip obstructed the efficient, rational

operation of Garden City by, *inter alia*, (a) objecting to tenants he did not procure; (b) agreeing

on tenancies and allowing such unapproved "tenants" to occupy premises without full board

- 4 -

approval; (c) granting existing tenants rent reductions without the knowledge or approval of the

board of directors; (d) failing to negotiate long-term renewals of leases even when requested by

tenants; and (e) blocking or delaying repairs and upgrading in commercial properties, even when

required by the terms of existing leases.  As a result of such actions, Garden City wound up

reporting losses in four of the six fiscal years ending May 31, 1996 - 2001.

### A.     The Debtor's Chapter 11 Case

8.     Due in large part to liability incurred during arbitrations arising out of

disputes over Garden City, on May 1, 1998 the Debtor filed a petition for reorganization under

title 11, chapter 11 of the Bankruptcy Code (the "Petition").  *In re Lawrence Kassover,* Case No.

98-43124 (Bankr. S.D.N.Y. 1998) (BRL).

9.     At the time of the Petition, one of the Debtor's principal assets was 813

shares or 5.66% of the shares of Garden City, the Kassover family owned commercial real

property holding and management company.

### B.     The Plan Of Reorganization Provides For A Liquidating Trustee To Marshall And Distribute The Debtor's Assets

10.     The Debtor's Plan of Reorganization (the "Plan") was confirmed on June

14, 2000.  *See* Order Confirming Chapter 11 Trustee's First Amended Plan of Reorganization,

(the "Confirmation Order").  The Plan provided for, *inter alia*, the creation of a liquidating trust

with the primary purposes of (a) liquidating the Debtor's remaining assets, (b) satisfying and

making distributions to creditors in accordance with a Liquidating Trust Agreement, and (c)

winding up the administration of the Debtor's estate.  *See* Plan, § 7.1.4.[1]  The Plan further

provided that the Liquidating Trustee shall "*marshal, liquidate and distribute the Trust Assets,*

---

[1] Capitalized terms that are not defined in the Opposition have the same definition as used in the documents cited.

NEWYORK.518037.2

*including . . . the stock of Garden City*" and oversee the "*merger,* sale or dissolution *of Garden City.*"  Plan, § 7.1.4.[2] (emphasis added); *see also* Confirmation Order, ¶¶ 13(b), 84(a).

11.     Pursuant to the Plan and Confirmation Order, the Bankruptcy Court retained post-confirmation jurisdiction, "until the termination of the Liquidating Trust, over all matters arising out of or relating the Chapter 11 Case," including, *inter alia*:

> Allowance or classification of Claims and determination of any objections or counterclaims to such claims;

> Compromises and settlements of Claims against or relating to the Debtor or the Estate;

> All questions and disputes regarding title to the assets of the Debtor or the Estate;

> Interpretation and enforcement of the Plan and issuance of such orders as may be necessary for the implementation, execution and consummation of the Plan;

> Disputes arising under and regarding implementation and enforcement of the Plan;

> Disputes regarding the compliance of the Trustee or the Liquidating Trustee with the requirements of the Confirmation Order; and

> Applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date.

Confirmation Order, ¶ 90; *see also* Plan, Article XI..

12.     The Plan became effective on June 30, 2000 (the "Effective Date").

**C.     The Trustee's Implementation Of The Plan**

13.     In order to delay, if not prevent, the sale of Garden City, Philip obstructed and interfered with the Trustee's due diligence and attempts to market Garden City in accordance

---

[2] Capitalized terms that are not defined in the Opposition have the same definition as used in the documents cited.

with the Plan.  In part as a direct result of Philip's threat of litigation, Prism withdrew and

refused to pursue its bid of $50 million and bidding was delayed for almost two years, until late

September, 2001.  During this time the economy slid into a recession that was exacerbated by the

September 11, 2001 terrorist attacks on the World Trade Center and Pentagon.  As a result, the

market value of Garden City deteriorated.

###      D.      The Trustee Disposes Of Garden City

14.      On November 9, 2001, the Liquidating Trustee commenced an adversary

proceeding in this Court seeking declaratory and injunctive relief and damages against Philip for

his tortious actions (Adv. Pro No. 01-03569) (the "Trustee Action").  The Liquidating Trustee

sought:

   a.      A declaration that, *inter alia*, the Liquidating Trustee had the power and
           authority pursuant to the Plan and Confirmation Order to dispose of
           Garden City's pursuant to the Stock Purchase and Merger Agreements;

   b.      An injunction prohibiting Philip from taking any action designed to
           interfere with the negotiation and consummation of the Merger; and

   c.      Damages for (a) Philip's tortious interference with the Debtor's Plan and
           the disposition of Garden City; (b) Philip's breach of his fiduciary duty as
           a Garden City Officer and shareholder and (c) contempt.

Verified Complaint For Declaratory and Injunctive Relief and Damages, dated November 9,

2001, at ¶¶ 53, 58 and 69.

15.      On November 30, 2001, the Bankruptcy Court enjoined Philip from

interfering with or obstructing the Liquidating Trustee's marketing and sale of Garden City,

including the commencement of any legal actions.  *See* Docket No. 12 in Adv. Pro No. 01-

03569.

16.      The court held that it had core jurisdiction over the Trustee Action because

the reorganization process "depends" upon the disposition of Garden City pursuant to the

Confirmation Order and that Philip's actions constitute an effort to avoid adherence to the confirmed Plan and to defeat or impair the Bankruptcy Court's jurisdiction over the Confirmation Order. *Id*., at ¶ 39.

17.     On July 3, 2002, the Trustee reached an agreement with Prism to acquire Garden City pursuant to a Settlement and Stock Purchase Agreement dated, July 3, 2002 (the "Stock Purchase Agreement") and an Agreement and Plan of Merger (the "Merger Agreement").

18.     The Liquidating Trustee signed the Stock Purchase Agreement in her capacity as the Court Appointed Liquidating Trustee of the Estate of Lawrence Kassover, and the Merger Agreement in her capacity as "the Court Appointed Liquidating Trustee of the Estate of Lawrence Kassover, as agent for the Garden City Company." *Stock Purchase Agreement*, at 1; *Merger Agreement*, at 1.

19.     The Merger Agreement provided, *inter alia*, for the Liquidating Trustee to act as Disbursing Agent for the former Garden City shareholders. *See* Merger Agreement, ¶ 3.2. The Merger Agreement required as preconditions to each shareholder's receipt of Merger Consideration that each shareholder present certain documentation to Merger Counsel and satisfy "all monetary obligations owed by each shareholder to [Garden City]." *Id* at ¶ 3.3. The Merger Order entered by this Court provided that the Trustee, Garden City, Prism, and PVP-GCC Holdingco II, LLC were authorized:

> [T]o take all actions necessary to consummate the [Stock Purchase and Merger Agreements], including . . . (a) the offer by Prism to each of Garden City's shareholders to purchase shares of Garden City controlled by them for no less than $2,500 per share; (b) the release by one or more Garden City shareholders of claims against Garden City; (c) the release by one or more Garden City shareholders of claims against other shareholders or the assignment of such claims to Garden City or Prism . . . .

Merger Order at 23.

20.    The Stock Purchase Agreement provides that "the Bankruptcy Court shall retain exclusive jurisdiction under the Plan for any post-closing challenge to the Merger." *Stock Purchase Agreement* at 2.  Similarly, the Merger Order provides that the Bankruptcy Court "shall retain exclusive jurisdiction under the Plan over any post-closing challenges and/or objections to the merger, the acquisition of the Debtor's Garden City shares and the acquisition or financing, as part of the Transaction, or the acquisition of any other Garden City shares pursuant thereto . . . ."  Merger Order, at 26.

21.    The Bankruptcy Court entered an order approving the Stock Purchase Agreement and the Merger Agreement on July 29, 2002 (the "Merger Order").  *See* Docket No. 384 in Case No. 98-43124.  The Bankruptcy Court granted the requested relief pursuant to 11 U.S.C. §§ 105, 363 and 1142.  The Merger with Garden City was consummated on August 23, 2002.  Under the terms of the Merger Agreement, the surviving corporation, GCC Merger Corp. (a merger subsidiary of Prism), changed its name to Garden City.  The shareholders of Garden City approved the Merger on July 26, 2002.

22.    The Trustee has disbursed full Merger Consideration to all qualified former Garden City shareholders.  Plaintiffs failed to satisfy the preconditions to receipt of the Merger Consideration.  Nine months after the deadline, Plaintiffs delivered to the Trustee share certificates and affidavits and requested payment of the full Merger Consideration.  On May 23, 2003, Garden City's President advised the Trustee that Plaintiffs had incurred substantial monetary obligations to the Garden City in excess of the Merger Consideration to which they would otherwise be entitled and demanded payment of all such obligations to Garden City.  Garden City also refused Plaintiffs' second request for payment on June 23, 2003.  However, on

- 9 -

August 20, 2003, the Trustee disbursed to Plaintiffs a portion of the Merger Consideration that

had been approved by Garden City without a waiver of any of the Company's rights.

23.     Due to Philip's interference with the Merger, on October 11, 2004, the

Liquidating Trustee moved to amend her Complaint to include claims against Philip Kassover

for his tortious conduct in preventing the disposition of Garden City.  *See* Docket No. 37 in Adv.

Pro. No. 01-03569.  In the Amended Complaint, the Trustee sought, *inter alia*:

   a.     Damages for Philip's tortious interference with the marketing of Garden
          City in accordance with the terms of the Plan and the Confirmation Order;

   b.     A declaration that the Trustee "has no liability to Philip Kassover or the
          Estate of Nathan Kassover for declining to release to them funds that she
          holds as Disbursing Agent under the Merger Agreement as a result of such
          former Garden City shareholders' failure to satisfy all conditions
          precedent to their right to receive full consideration for their stock as set
          forth in the agreement"; and

   c.     A declaration that the Trustee has no liability to Philip and the Nathan
          Kassover Estate for not paying additional Per Share Merger Consideration
          to them in the absence of the express consent of Prism to any such
          payments.

Docket No. 37, Ex. 1, ¶ 2, in Adv. Pro. No. 01-03569.

24.     Following the Merger, on October 11, 2004, Garden City filed a motion to

intervene (the "Motion to Intervene") in the adversary proceeding brought by the Liquidating

Trustee against Philip and alleged claims against Philip including, *inter alia*:

   a.     That Philip breached his fiduciary duty to Garden City by interfering with
          the Merger with Prism and the implementation of the Plan;

   b.     That Philip tortiously interfered with the performance of the Plan, which
          was a binding contract between Garden City and the Liquidating Trustee;

   c.     That Philip tortiously interfered with both the Liquidating Trustee's and
          Garden City's performance of the Plan's terms for the disposition of
          Garden City;

   d.     That Philip tortiously interfered with the Trustee's efforts to market
          Garden City; and

- 10 -

e.     A declaration that the Trustee has no liability to Philip.

Docket No. 38, in Adv. Pro. No. 01-03569.

25.     The Bankruptcy Court referred the Adversary Proceeding to mediation on December 15, 2004, and as a result, the neither the Motion to Supplement nor the Motion to Intervene have been decided by the Bankruptcy Court.  (*Id.* Docket No. 56.)

26.     On June 27, 2005, the Bankruptcy Court entered an Order extending the term of the Liquidating Trust for two years, to June 30, 2007.  (*See* Docket No. 443 in Case No. 98-4312.)  The Order is final for all purposes.

27.     On or about July 6, 2005, Plaintiffs commenced the instant action in the New York State Supreme Court, New York County, in which they assert twelve causes of action, all of which arise out of the Bankruptcy Court-approved disposition of Garden City pursuant to the Plan and the Confirmation Order.  More specifically, Plaintiffs seek recovery of their portion of the Merger Consideration, plus damages.  Plaintiffs have also asserted breach of fiduciary duty and breach of contract claims against the Liquidating Trustee in her capacity as Disbursing Agent under the Merger Agreement for failing to pay Philip his portion of the Merger Consideration.  Thus, the relief requested by Plaintiffs pertains to the same subject matter in the Adversary Proceeding commenced by the Liquidating Trustee that is currently before this Court.

28.     On August 2, 2005, defendants R. Peyton Gibson and Prism Venture Partners, LLC removed this action to the Federal District Court for the Southern District of New York.  On August 31, 2005, Plaintiffs' filed their Motion to Remand.

## LEGAL ARGUMENT

## I.     THE BANKRUPTCY COURT'S BROAD JURISDICTION

29.     Unless Congress otherwise provides, a defendant may remove a state court action to a federal court having original jurisdiction.  28 U.S.C. § 1441(a).  The Bankruptcy

- 11 -

removal statute provides that "a party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334 grants to the federal district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 11 U.S.C. § 1334(a). Proceedings that "arise under" or "arise in" a bankruptcy case are within the bankruptcy court's "core" jurisdiction, and bankruptcy courts may issue final determinations in core matters. *See* 28 U.S.C. § 157(b)(1).

30.     A bankruptcy court's core jurisdiction is construed "as broadly as possible . . . . close to or congruent with constitutional limits." *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002) (internal quotations and citations omitted). This broad jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings." *Id.* Included among the court's "core" jurisdiction are proceedings concerning estate administration; plan confirmation; orders approving the sale of property; and proceedings affecting the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2)(A),(L), (N), and (O). Disputes based upon rights established in bankruptcy court orders are core proceedings. *See In re Petrie Retail, Inc*, 304 F.3d at 229 (finding that dispute arising from rights established in bankruptcy sale order issued pursuant to section 363 was core); *see also In re Ames Department Stores*, 317 B.R. 260, 270-71 (Bankr. S.D.N.Y. 2004) (same).

31.     "[A] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its orders." *In re Petrie Retail, Inc.*, 304 F.3d at 230; *see also In re Johns-Manville Corp.*, 2004 WL 1876046, at *27 (Bankr. S.D.N.Y. Aug. 17, 2004) (Lifland, J.) ("[T]he bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in

NEWYORK.518037.2

aid of their proper execution"); *In re Paramount Hotel Corp.*, 319 B.R. 350, 356 (Bankr.

S.D.N.Y. 2005) (same); *In re Ionosphere Clubs, Inc.*, 1999 WL 717291, at *3 (S.D.N.Y. Sept.

15, 1999) (stating that post-confirmation jurisdiction can be "as broad as the statutory grant"); 11

U.S.C. § 1142(b) (recognizing the court's post confirmation jurisdiction to order any act

necessary for plan consummation).

II.   **THE BANKRUPTCY COURT POSSESSES
JURISDICTION OVER PLAINTIFFS' CLAIMS**

   A.   **The Bankruptcy Court Has Core Jurisdiction Pursuant to 11
U.S.C. Section 1334 To Interpret And Enforce Its Order
Implementing The Debtor's Plan**

   32.   Plaintiffs' action arises from Defendants' alleged breach of rights

established in a Bankruptcy Court-ordered disposition of the Debtor's shares of Garden City.

The liquidation of the Debtor's shares in Garden City and distribution of the proceeds to

creditors was one of the central vehicles for implementing the Debtor's Plan. This Court made a

factual finding that the terms of Merger Agreement were "reasonable", and the Court authorized

the execution and enforcement of the Merger Agreement according to its terms. *See* Merger

Order, at 18, 22.

   33.   Plaintiffs, far from accepting the terms of the Merger Order and

Agreement as a *fait accompli*, now seek in their newly filed Complaint consideration that

exceeds the Merger Consideration authorized by the Bankruptcy Court. Plaintiffs base their

claim on representations (and alleged misrepresentations) made by certain Defendants to the

Bankruptcy Court concerning the Merger Consideration. In their Complaint (filed in the state

court), Plaintiffs collaterally attack this Court's final orders and make the following allegations

concerning Defendants' purported violation of the terms of the Merger Order and Agreement,

approved by this court in the exercise of its core jurisdiction:

- 13 -

During a Bankruptcy Court hearing Gibson, Sabella and Prism represented that each Garden City shareholder would receive $3117 (Complaint, ¶ 39);

During the same hearing neither Prism, Gibson, nor Sabella disclosed to the Bankruptcy Court that the Merger Agreement submitted into evidence that day differed from the proposed merger agreement that Gibson had previously submitted to the Court (Complaint, ¶ 40);

The Merger Order specified the material terms of the Merger (Complaint, ¶ 42);

Gibson, PVP and Prism implemented a transaction different than the transaction contemplated in the Merger Order (*Id*.);

Although the Merger Order provided for a release in favor of Garden City from shareholders, neither Prism nor PVP required such a release of the other shareholders, who have received full Merger Consideration (Complaint, ¶ 44);

Plaintiffs did not receive the per share Merger Consideration to which they were entitled under the Merger Order (Complaint, ¶ 44);

After the closing of the Merger, Defendants made repeated false representations to Plaintiffs in various "court proceedings" concerning the necessity of obtaining a release as a condition precedent to receiving the Merger Consideration (Complaint, ¶ 48);

Gibson violated her duties by failing to provide Plaintiffs with the Merger Consideration required in violation of the Merger Agreement (Complaint, ¶ 48); and

Prism, PVP and Sabella advised Gibson that the Merger Consideration should be withheld from both Philip and the Nathan Kassover Estate, because they had to satisfy certain "monetary obligations" to Garden City as a condition precedent to the right to receive the Merger Consideration, and that such interpretation of the term "monetary obligations" was contrary to, and belied by, certain Defendants' representations to the Bankruptcy Court and plaintiffs as alleged herein. (Complaint, ¶ 49).

34.     As the above allegations clearly demonstrate, Plaintiffs' Complaint, although nominally couched in state law, is essentially a collateral attack on this Court's Merger Order. The Complaint, at its core, alleges that the Defendants violated the Merger Order by failing to pay the Merger Consideration owed to Plaintiff. Adjudication of this matter will require (i) the interpretation of, and the determination of the parties' rights under, the Merger

- 14 -

Order and the Court-approved Agreements, (ii) a determination as to whether Defendants made

misrepresentations to Plaintiffs before the Bankruptcy Court, and (iii ) how, if at all, to enforce

the Merger Order.  The determination of these matters undisputably falls with this Court's core

jurisdiction.  *See*, *e.g.*, *Central Vermont Public Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d

Cir. 2003) (stating that the bankruptcy court has core jurisdiction over state law claims that are at

"heart" of the administration of the bankruptcy estate); *Comco Assocs. and Spa 77k L.P. v.

Faraldi Food Indus. Ltd., et al.*, 170 B.R. 765, 772 (Bankr. E.D.N.Y. 1994) (finding that a

breach of contract action between two non-debtors was "inextricably linked" to the bankruptcy

court's order and therefore fell "squarely" within the bankruptcy court's core jurisdiction); *In re

Winimo Realty Corp.*, 270 B.R. 108, 121 (S.D.N.Y. 2001) (stating that core jurisdiction is also

triggered when the disputed interest is the single biggest asset of the bankruptcy estate).

35.    A quick review of Plaintiffs' claims renders the Bankruptcy Courts'

jurisdiction over this matter even more obvious.  In Claims One and Two, Plaintiffs allege that

Prism, PVP, Garden City, Sabella and the Board Defendants violated New York Business

Corporation Law 501(c) and breached their fiduciary duties to Plaintiffs for failing to pay

Plaintiffs "no less than $2500 per share" - *a direct quote from the Merger Order.  See* Complaint,

¶ 57.

36.    In Claims Three, Four and Five, Plaintiffs allege that Prism, PVP, Garden

City and Sabella *fraudulently misrepresented before the Bankruptcy Court* that Plaintiffs would

be paid the same consideration as other Garden City shareholders for their shares, that

Defendants were therefore unjustly enriched, and that Plaintiffs are entitled to the imposition of a

constructive trust as a result.  *See* Complaint, ¶ 66.

NEWYORK.518037.2

37.     In Claims Seven and Eight, Plaintiffs allege that Gibson breached the

*Court-approved* Merger Agreement and violated her fiduciary duties under same by not releasing

additional Merger Consideration to Plaintiffs.  In Claims Nine and Ten, Plaintiffs allege that

Prism, PVP, Garden City and Sabella aided and abetted Gibson's and the Board Defendants'

alleged breach and as a result tortiously interfered with the Court-approved Merger Agreement.

In Claim Eleven Plaintiffs request injunctive relief directing Prism, PVP, Garden City and

Sabella to continue to operate Garden City, even though the Court-approved Merger Agreement

permits otherwise.

**B.     The Bankruptcy Court Has Inherent
         Jurisdiction To Interpret and Enforce Its Own Orders**

38.     The Bankruptcy Court possesses "inherent or ancillary jurisdiction to

interpret and enforce its own orders wholly independent of the statutory grant of jurisdiction

under 28 U.S.C. § 1334."  *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996)

(Lifland, J.) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).  The bankruptcy court

has "inherent power to enforce its own orders and hear challenges to the validity of the

proceedings before it."  *In re Baker*, 2005 WL 2105802 at *4 (E.D.N.Y. August 31, 2005); *see*

*also* 11 U.S.C. § 105(a) (providing that the bankruptcy court may "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title [11]"); 11 U.S.C.

§ 1142(b) (providing that the court may direct the debtor and others to "perform any other act . . .

necessary for the consummation of the plan").  Since a bankruptcy judge may only issue final

orders concerning "core" matters, it follows that inherent jurisdiction is core.

39.     This inherent power is clearly demonstrated by *In re Chateaugay Corp.*,

213 B.R. 633, 637 (S.D.N.Y. 1997).  In *Chateaugay*, plaintiffs commenced several state court

tort liability actions against the successor company to the purchaser of the debtor's assets in

- 16 -

bankruptcy.  Defendants sought declaratory and injunctive relief in the bankruptcy court

enjoining the state actions on the basis that the sale order had specifically excluded the transfer

of plaintiffs' liabilities to the purchaser.  Defendants alleged, as in the instant case, that the

purchaser and Debtor had made misrepresentations before the bankruptcy court concerning the

assumption of liabilities pursuant to the sale order.  The bankruptcy court denied the Defendants'

motion to dismiss for lack of personal jurisdiction and enjoined the state actions.  In affirming on

appeal, the district court found that the Defendants' allegations (i) went "to the heart of the

bankruptcy proceeding"; (ii) constituted a "collateral attack on the Sale Order, the Plan and the

Confirmation Order" and (iii) that permitting the state court litigations to proceed could result in

inconsistent holdings.  *Id* at 637.

     40.     Thus, it is clear that all of Plaintiffs' claims either relate directly to rights

established in the Bankruptcy Order, and the Bankruptcy Court may assert its core jurisdiction

over them.

### C.    The Bankruptcy Court Possesses Core Jurisdiction Over Plaintiffs' Claims Because The Resolution of Those Claims Will Assist In Estate Administration

     41.     The Bankruptcy Court has core jurisdiction over proceedings concerning

estate administration and affecting the liquidation of the assets of the estate.  28 U.S.C. §

157(b)(2)(A), and (O).[3]  The Debtor's Plan vested the duty and power to administer and liquidate

---

[3] Plaintiffs incorrectly assert that the Debtor's estate ceased to exist upon Plan confirmation.  The Bankruptcy Code provides that confirmation of a plan vests all estate property in the debtor "*unless otherwise provided in the Plan or in the Order confirming the Plan*."  11 U.S.C. § 1141(b); *see also In re Global Crossing, Ltd Sec. Litig.*, 2003 WL 22705127, at *2 (S.D.N.Y. Nov. 14, 2003) (stating that a post-confirmation proceeding may still have an effect on the bankruptcy estate).  The Debtor's Plan provided for the vesting of estate assets in the Debtor "except as otherwise provided in the Plan."  *See* Plan, § 10.3.  Upon confirmation of the Plan certain Trust Assets were transferred the to Liquidating Trust for the benefit of creditors.  *See* Plan, § 7.1.2.  These "Trust Assets" included "*[a]ll assets of the estate*", including the estate's rights to compensation connected with the ownership of Garden City and litigation recoveries or settlements achieved by the Liquidating Trustee, and anything transferred to the Liquidating Trust "after the Effective Date."  *See* Plan, at § 1.48.  Thus, the Debtor's Plan clearly provided that

*(continued on next page)*

NEWYORK.518037.2

estate assets in the Liquidating Trustee.  *See* Plan, 7.1.4 (describing functions of liquidating

trustee).  As noted above, the Liquidating Trustee administered and liquidated estate assets by

entering into and obtaining Bankruptcy Court approval of the Stock Purchase and Merger

Agreements.

      42.     The Liquidating Trustee has already sought damages from Philip for his

tortious interference with the disposition of Garden City.  The Trustee has sought to amend her

complaint to include an additional damages claim for Philip's interference with the marketing of

Garden City and a declaration that she is not liable to Plaintiffs for Plaintiffs' failure to receive

Merger Consideration.  If the Liquidating Trustee is successful in prosecuting these claims, she

will recover additional monies for distribution to the estate's creditors.

      43.     Plaintiffs' claims are inextricably linked to the damages that the

Liquidating Trustee seeks from Plaintiffs' tortious activities.  Plaintiffs' entitlement to Merger

Consideration is predicated upon adjudication of the Trustee's claims.  This is because the

liability on those claims constitutes a "monetary obligation" to Garden City, the full payment of

which is a condition precedent to receiving Merger Consideration.  *See* Merger Agreement, §

3.3.  Thus, the adjudication of Plaintiffs' claims administration and liquidation of the Debtor's

estate is heavily implicated by Plaintiffs' claims, and they in turn implicate core plan issues of

estate administration.

      44.     Plaintiffs' claims also implicate estate administration because state court

adjudication of those claims will require the Trustee to defend, unnecessarily, what are

essentially identical actions in two separate forums.  Unlike the State Court, the Bankruptcy

--------------------------------

*(continued from previous page)*

certain estate assets would survive confirmation and be transferred to the Liquidating Trustee, and any disputes

*(continued on next page)*

NEWYORK.518037.2

Court, which presided over the actions and orders cited in Plaintiffs' Complaint, is already fully-familiar with the circumstances underlying Plaintiffs' claims.[4]

45.     Finally, estate administration is implicated because Plaintiffs have asserted claims against the Liquidating Trustee of the Debtors' estate.  Plaintiffs allege that they are suing Ms. Gibson only in her capacity as Disbursing Agent.  However, it is clear that but for her appointment as Liquidating Trustee pursuant to the Debtor's chapter 11 Plan, and but for her obligation pursuant to that Plan to liquidate the Debtors' shares in Garden City, that the Trustee would not have signed the Stock Purchase and Merger Agreements, obtained this Court's approval of same, and ultimately been sued by Plaintiffs.  Indeed, Plaintiffs even admit in their Complaint that Gibson entered and sought Bankruptcy Court approval of Stock Purchase and Merger Agreements in her capacity as Liquidating Trustee.  *See* Complaint, ¶¶ 27, 31 and 33. Plaintiffs' attempt to parse the Trustee's roles thus defies the facts of this case, and is a clear attempt to avoid this Court's jurisdiction.

46.     Since Plaintiffs are in fact suing Ms. Gibson in her capacity as Liquidating Trustee, Plaintiffs were required to obtain the leave of this Court to bring an action against her in state court.  *See*, *e.g.*, *Lingenfelter v. Stoebner*, 2005 WL 1225950, at *3 (D. Minn. May 23, 2005) ("for over 100 years, the law has barred suits against a trustee in a non-appointing court for acts within the trustee's official capacity, without the court's prior leave") (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)).  Such leave is necessary because:

_____

(*continued from previous page*)
arising in connection thereto, were subject to this Court's jurisdiction.

[4] This Court is fully aware of Philip Kassover's litigious practices which have spanned decades.  In fact, Plaintiffs' failure to deliver releases to the Trustee speaks volumes as to whether they intended to be bound by the Plan and related agreements.

NEWYORK.518037.2

> If the [trustee] is burdened with having to defend against suits by litigants
> disappointed by his actions on the court's behalf, his work for the court
> will be impeded . . . Without the requirement [of leave], trusteeship will
> become a more irksome duty, and so it will be harder for courts to find
> competent people to appoint as trustees.  Trustees will have to pay higher
> malpractice premiums, and this will make the administration of the
> bankruptcy laws more expensive . . . . Furthermore, requiring that leave to
> sue be sought enables bankruptcy judges to monitor the work of trustees
> more effectively."

*Carter v. Rodgers*, 220 F.3d 1249, 1252-53 (11th Cir. 2000) (citing *In re Linton*, 136 F.3d 544,

545 (7th Cir. 1998).

47.    Thus, in addition to implicating the Bankruptcy Court's core

administrative and liquidating functions, Plaintiffs' action is procedurally improper.

**D.    The Bankruptcy Court Has Jurisdiction Over
the Instant Action Because It Implicates Estate
Property – Plaintiffs' Claims Against Philip Kassover**

48.    It is indisputable that the bankruptcy court has exclusive jurisdiction over

the property of the Debtor's estate.  *See* 28 U.S.C. 1334(e) (providing that "[t]he district court in

which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property,

wherever located, of the debtor as of the commencement of such case, and of property of the

estate.")  Section 1141(b) of the Bankruptcy Code provides that "[e]xcept as otherwise provided

in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of

the estate in the debtor."  11 U.S.C. 1141(b); *see also In re Canton Jubilee, Inc.*, 253 B.R. 770,

776 (Bankr. E.D.Tex. 2000) (stating that the termination of the estate is "expressly subject to the

terms and provisions of the confirmed plan").

49.    Estate property, of course, includes all causes of action held by the debtor

or a trustee.  The Liquidating Trustee's damages claims against Philip Kassover for tortious

interference with the Plan of Reorganization and with the disposition of Garden City are the

Debtor's estate's greatest asset.  Adjudication of the instant proceeding in state court would

- 20 -

essentially decide and dispose of these claims outside of the jurisdiction of the Bankruptcy

Court, thereby denying the Bankruptcy Court of jurisdiction over estate property.

E.   **Even if it Did Not Have Core Jurisdiction, Which it Does,
the Bankruptcy Court Possesses "Related To"
and/or Ancillary Jurisdiction Over All of Plaintiffs' Claims**

50.   The Bankruptcy Court possesses "related-to" jurisdiction over Plaintiffs'

claims.  A proceeding meets the jurisdictional threshold of 28 U.S.C. § 1334(b) "if the outcome

of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy." *See, e.g., In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)

(stating that the bankruptcy court has "related to" jurisdiction over any action that might have a

"conceivable effect" on the bankrupt estate) (citing *Pacor v. Higgins (In re Pacor)*, 743 F.2d

984, 994 (3d Cir. 1984)).  A bankruptcy court also has "related to" jurisdiction over an action

where its outcome will affect the amount of money available for distribution to creditors.  *In re*

*Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 323 (S.D.N.Y. 2003) (noting that "the potential

alteration of the liabilities of the estate and change in the amount available for distribution to

other creditors is sufficient to find that litigation among non-debtors is 'related to' the

bankruptcy proceeding"); *Delcon Constr. Corp. v. Bd. of Educ. of the City of Yonkers*, 299 B.R.

60, 62 (S.D.N.Y. 2003) (bankruptcy court had related to jurisdiction over breach of contract

action that could bring substantially more assets into the estate); *Betty Owen Schools, Inc. v.*

*United States Dep't of Educ. (In re Betty Owen Schools, Inc.)*, 195 B.R. 23, 29 (Bankr. S.D.N.Y.

1996) (noting that the bankruptcy court has "at a minimum" related to jurisdiction over a

proceeding that will affect the distribution to creditors); *In re Ames Dep't Stores, Inc.*, 190 B.R.

157, 161 (Bankr. S.D.N.Y. 1995) (same).

51.   Here, the resolution of Plaintiffs' claims will directly affect the amount

available for distribution to the Debtor's creditors.  The estate's greatest assets are its claims

- 21 -

against Philip Kassover.  The Liquidating Trustee's successful prosecution of her claims against

Plaintiffs may permit her to make additional distributions to the estate's creditors.  However, if

Plaintiffs claims are remanded to state court, the prosecution of proceedings there could have

both *collateral estoppel* and *res judicata* effect on the proceedings currently before the

Bankruptcy Court and could preclude recovery against Philip, thereby preventing any additional

recovery for the estate's creditors.

52.      Moreover, in the unlikely event that the Court finds that it does not have

either core or related to jurisdiction over any one of Plaintiffs' specific claims, it may exercise

ancillary jurisdiction pursuant to 28 U.S.C. § 1367(a) over those claims since they involve the

same facts and circumstances as Plaintiffs' other claims.  *In re Radcliffe*, 317 B.R. 581, 590

(Bankr. D.Conn. 2004) (noting that the Second Circuit has interpreted section 1367 to confer

supplemental jurisdiction "on the bankruptcy courts as well as district courts") (citing *In re*

*Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994).

F.      **The Bankruptcy Court Has Jurisdiction Over**
**the Instant Matter Pursuant to the All Writs Act**

53.      The Bankruptcy Court has jurisdiction to hear this proceeding pursuant to

the All Writs Act, which permits all courts established by act of Congress "to issue all writs

necessary or appropriate in aid of their respective jurisdictions . . . ."  28 U.S.C. § 1651(a); *see*

*also Findley v. Laughead (In re Johns-Manville Corp.)*, 27 F.3d 48, 49 (2d Cir. 1994) (finding

that district and bankruptcy courts had jurisdiction under All Writs Act to issue stay of litigation

against settlement trust); *Henry A. Leonard & Co. v. United States Trustee (In re River Foal,*

*Inc.)*, 161 B.R. 568, 570 (S.D.N.Y. 1993) (stating that a "statutory basis for continuing

bankruptcy court jurisdiction may be found in the All Writs Statute").  The Bankruptcy Court

- 22 -

therefore possesses jurisdiction under to issue any orders necessary to protect the implementation of the Debtor's Plan and the Merger Order.

**III.    THE WELL-PLEADED COMPLAINT RULE IS
INAPPLICABLE BECAUSE PLAINTIFFS' COMPLAINT
INVOKES THE BANKRUPTCY COURT'S CORE JURISDICTION**

54.    The well-pleaded complaint rule "requires that the basis of the federal jurisdiction be discernible from matters alleged in the complaint." *Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC*, 357 F.Supp.2d 529, 535 (E.D.N.Y. 2004).  As noted, several of Plaintiffs' causes of action essentially allege a breach of the Merger Order.  The Bankruptcy Court has core jurisdiction to interpret, enforce and hear any challenges to that Order.

55.    In addition, the well-pleaded complaint rule is inapplicable because the artful pleading doctrine applies in to this action.  That doctrine "prevents a plaintiff from avoiding removal by framing in terms of state law a complaint the real nature of which is federal, regardless of plaintiff's characterization." *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 100 (2d Cir. 2001) (internal citations and quotations omitted); *In re Agent Orange Prod. Liability Litig.*, 996 F.2d 1425, 1431-32 (2d Cir. 1993) (stating that "a complaint which appears to be grounded solely in state law actually may be federal in nature, and thus removable, if its true nature has been disguised by the plaintiff's artful pleading").

56.    As shown above, Plaintiffs have attempted to "frame in terms of state law" a complaint whose "real nature" is federal.  *Marcus v. American Tel. & Tel. Co.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (holding that plaintiffs' breach of warranty claims were federal in nature because they arose from tariff filed in accordance with federal statute). At their essence, Plaintiffs' claims challenge the Bankruptcy Court-ordered sale of Garden City and implicate the Debtor's Plan of Reorganization and the marshalling and distribution of estate assets by the

- 23 -

Liquidating Trustee.  Since Plaintiffs' Complaint implicates this Court's core powers, the well-pleaded complaint rule does not apply.

## IV.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF SHOWING THAT EITHER MANDATORY OR PERMISSIVE ABSTENTION APPLY

57.    Plaintiffs have not met their burden of proving the existence of each of the elements necessary for mandatory abstention.  *See*, *e.g.*, *In re Pinnacle Corp.*, 237 B.R. 240, 242 (Bankr. D.Conn. 1999) (stating that party seeking relief bears burden of proving abstention factors).  Section 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

58.    Plaintiffs have failed to show the existence of two essential elements for mandatory abstention.  First, as demonstrated above, the Bankruptcy Court possesses core jurisdiction over the Plaintiffs' claims.  *See*, *e.g.*, *In re AHT Corp.*, *et al.*, 265 B.R. 379, 385 (Bankr. S.D.N.Y. 2001) (finding mandatory abstention inapplicable where bankruptcy court possessed arising in jurisdiction over claims).  Even if the Bankruptcy Court were to find that it possesses only related to jurisdiction over any one of the Debtors' claims, it may still assert supplementary jurisdiction over such claim pursuant to 28 U.S.C. § 1367.

59.    Mandatory abstention is not warranted for the additional reason that the Plaintiffs' Complaint cannot be timely adjudicated in state court.  "The requirement of timely adjudication necessarily entails a comparison of the time required for litigation in the State Court Action as compared with the litigation scheduled in the [Bankruptcy Court]."  *In re AHT Corp.*,

- 24 -

265 B.R. at 388.  Conclusory assertions about timely adjudication cannot establish the right to mandatory abstention.  *Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 50 (S.D.N.Y. 2005); *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003); *Tow v. Credit Suisse First Boston Corp.*, 2004 WL 1660576 at *3 (D. Conn. July 20, 2004).  There is no question that this Court, which presided over the negotiation, drafting and confirmation of the Debtors' Plan, the approval of the Stock Purchase and Merger Agreements, and the Trustee's adversary proceeding against Philip, is thoroughly versed in the circumstances from which Plaintiffs' Complaint arises. Remanding this action to a state court wholly unfamiliar with the legal and factual issues presented by Plaintiffs' Complaint and a history spanning countless evidentiary hearings over the life of this bankruptcy case would undoubtedly slow the adjudication of Plaintiffs' claims, in addition to resulting in unnecessary duplicative motion practice and discovery.

60.     Plaintiffs have not requested that this Court permissively abstain from exercising its jurisdiction over this matter.  *See* 28 U.S.C. § 1334(c)(1).  As with mandatory abstention, permissive abstention is not applicable.  The decision to permissively abstain is left to the discretion of the bankruptcy court.  *In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 92-93 (Bankr. S.D.N.Y. 2005) (listing twelve factors).  Permissive abstention should not be exercised in this action for several reasons.

61.     First, permissive abstention is not favored in matters involving the bankruptcy court's interpretation of its own orders.  *See In re  U.S.H. Corp. of New York v. Los Prados Comm. Assoc., Inc.*, 280 B.R. 330 (Bankr. S.D.N.Y. 2002).  Second, judicial economy will be served by the exercise of bankruptcy court jurisdiction.  *See, e.g., Fed. Ins. Co. v. Sheldon*, 167 B.R. 15, 21 (Bankr. S.D.N.Y. 1994) (stating that the bankruptcy courts should "avoid the inefficiencies of piecemeal litigation" when determining whether to exercise).  Third,

the exercise of bankruptcy jurisdiction will "reduce the potential for inconsistent adjudications

and allow for more efficient, non-duplicative discovery than would be possible if the litigations

were allowed to proceed in separate fora." *Rahl v. Bande*, 316 B.R. 127, 136 (S.D.N.Y. 2004).

Fourth, Plaintiffs' claims do not raise any novel or unsettled issues of state law. *See, e.g.*, *In re

Balco*, 323 B.R. at 93. Finally, Plaintiffs' action implicates this Court's core jurisdiction. *Id.*

## **CONCLUSION**

62.     For the foregoing reasons, Plaintiffs' motion to remand this action should

be denied.

Dated: New York, New York
       September 14, 2005

SALANS

By: /s/  Lee P. Whidden
    Claude D. Montgomery  (CM 9664)
    Lee P. Whidden        (LW 1649)
    Paul C. Gunther       (PG 3023)
620 Fifth Avenue
New York, NY 10020
212-632-5500
*Attorneys for all Defendants <u>except</u> Rosalie
  Erickson, individually and as
  representative of The Estate of Max
  Kassover*

NEWYORK.518037.2