UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                              FOR PUBLICATION
---------------------------------------------------------------------
In re

      LAWRENCE KASSOVER,                                     Chapter 11
                                                             Case No. 98-43124

               Debtor.

---------------------------------------------------------------------
RUTH KASSOVER, as co-executor of THE ESTATE
OF NATHAN KASSOVER, and PHILIP KASSOVER,
in his individual capacity,

                    Plaintiffs                  Adv. Pro. No. 05-02437

      - against –

PRISM VENTURE PARTNERS, LLC, PVP-GCC
HOLDINGCO II, LLC, THE GARDEN CITY
COMPANY, INC., RICHARD SABELLA, ROSALIE
ERICKSON, in her individual capacity and as personal
representative of THE ESTATE OF MAX
KASSOVER, RICHARD BAIME, LULU
KASSOVER, HARRIETTE K. BAIME, LLC,
MORTON KASSOVER, HARRIETTE K. BAIME and
MORTON KASSOVER as executors of THE ESTATE
OF SAMUEL KASSOVER, SLOBODIEN FAMILY
PARTNERSHIP, LP AND R. PEYTON GIBSON,

                    Defendants.
---------------------------------------------------------------------

APPEARANCES

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
Attorneys for Plaintiffs
1633 Broadway
New York, New York 10019
212-833-1100
By: Edward A. Friedman, Esq.
Andrew W. Goldwater, Esq.
Melissa E. London, Esq.

SALANS
Attorneys for all Defendants except Rosalie
Ericson individually and as representative
of the Estate of Max Kassover
620 Fifth Avenue
New York, New York 10020
212-632-5500
By: Claude D. Montgomery, Esq.
Lee P. Whidden, Esq.
Paul C. Gunther, Esq.

Before: Burton R. Lifland
          United States Bankruptcy Judge

# MEMORANDUM DECISION AND ORDER
# GRANTING MOTION TO REMAND

Ruth Kassover, as co-executor of the estate of Nathan Kassover, and Philip Kassover, in his individual capacity, (together "the Plaintiffs"), move for an order remanding this action (the "State Court Action") to the New York State Supreme Court. Defendants Prism Venture Partners, LLC, ("Prism"), PVP-GCC HoldingCo II, LLC., The Garden City Company, Inc. ("Garden City"), Richard Sabella, Richard Baime, Lulu Kassover, Harriette K. Baime, LLC, Morton Kassover, Harriette K. Baime and Morton Kassover as executors of The Estate of Samuel Kassover, Slobodien Family Partnership, LP and R. Peyton Gibson, the Liquidating Trustee and Disbursing Agent who was also the chapter 11 trustee for the estate of Lawrence Kassover (the "Debtor"), object to the remand and move to dismiss the complaint.

**Background**

The underlying facts to this dispute have been set forth at length in several opinions of this

Court, the District Court, the Second Circuit Court of Appeals[1] and several state courts in New York and New Jersey. Accordingly, for the purposes of this Motion, I shall summarize only the facts relevant to this Motion.

Philip Kassover is a member of the Kassover family which controlled, among other things, the Garden City Company ("GCC"), a closely held real estate corporation based in Garden City, New York  The extended members of the Kassover family have spent most of the past two decades in litigation with each other over a variety of governance and financial disputes concerning GCC and other assets that were jointly owned. *In re Kassover*, 2004 WL 693410 (2d Cir. Apr 02, 2004); *see also Kassover v. Gibson*, 2003 WL 21222341, *2 (S.D.N.Y.2003) (court dubbed the ongoing litigation as a "Dickensian saga"); *In re Kassover,* 2002 WL 100640, *2 (S.D.N.Y Jan. 24, 2002) ("This litigation appears to be a career for Philip Kassover and perhaps his counsel who have put roadblocks

---

[1] *In re Kassover*, 2004 WL 693410 (2nd Cir. Apr 2, 2004); *In re Kassover*, 343 F.3d 91 (2d Cir. 2003); *Kassover v. Gibson*, 2002 WL 337902 (2d Cir. Mar 04, 2002); *In re Kassover* 2002 WL 126172 (2d Cir. Jan 31, 2002); *Kassover v. Gibson*, 2003 WL 21222341, *2 (S.D.N.Y.2003), *In re Kassover,* 2002 WL 100640, *2 (S.D.N.Y Jan. 24, 2002); *In re Kassover*, 268 B.R. 698 (S.D.N.Y. 2001); *In re Kassover*, Memorandum Decision and Order Disqualifying Kaye, Scholer, Fierman, Hayes & Handler, LLP, (Bankr. S.D.N.Y. Mar. 15, 2000) ECF #191; *In re Kassover,* Case No. 98-43124, Memorandum Decision re: Liquidating Trustee's Objection to Proof of Claim filed by Philip Kassover and Philip Kassover's Cross-Motion to Compel Arbitration (Bankr. S.D.N.Y. Dec. 19, 2000) ECF #306; *Garden City Co. Inc. v. Kassover* 251 A.D.2d 9, 673 N.Y.S.2d 653 (N.Y.A.D. 1 Dept.,1998), *leave to appeal dismissed*, *Garden City Co., Inc. v. Kassover,* 93 N.Y.2d 848 (N.Y. 1999); *Kassover v. Kassover*, 312 N.J.Super. 96, 711 A.2d 360 (N.J.Super.A.D.1998);*Matter of Grusetz* 248 A.D.2d 618, 618, 669 N.Y.S.2d 928 (N.Y.A.D. 2 Dept. 1998); *Kassover v. Kassover*, 162 A.D.2d 402, 557 N.Y.S.2d 325 (N.Y.A.D. 1 Dept.,1990); *Kassover v. Garden City Co.,* A-4-90T5, unreported opinion (N.J. Super.A.D June 11, 1991); *Kassover v. Gordon Family Associates, Inc.*, 120 Misc.2d 196, 465 N.Y.S.2d 668 (N.Y.City Civ.Ct. Jul 15, 1983). *See also*, *Kassover v. Vim Elec. Co.*, 19 A.D.2d 517, 240 N.Y.S.2d 37 (N.Y.A.D.1963)(breach of contract action by one of the four brothers regarding the agreement to run the family business as equal partners during their lifetime).

at every corner to obstruct the trustee from implementing the plan of reorganization.")

One of the Kassover family members, Lawrence Kassover (the "Debtor"), his assets depleted by the ongoing litigation, filed for Chapter 11 protection on May 1, 1998 (the "Filing Date"). At the Debtor's request, a chapter 11 trustee, R. Peyton Gibson (the "Chapter 11 Trustee") was appointed soon thereafter. On the filing date, the Debtor had interests in the Kassover family real estate holdings.[2] Among these interests was a 5.663% interest in GCC. Philip indirectly and directly controlled approximately 22% of GCC and beginning in 1996, had become its *de facto* chief executive officer controlling its day to day operations.

On June 14, 2000, over five and a half years ago, this Court signed an order (the "Confirmation Order"), confirming the Chapter 11 Trustee's First Amended Plan of Reorganization (the "Plan"). The Plan provided for, among other things, the rejection of a shareholders agreement (the "Shareholders Agreement"), dated July 22, 1976 between and among the GCC and its then shareholders. *In re Kassover*, 2004 WL 693410 (2d Cir. April 2, 2004). Philip objected to the Plan but withdrew his objection, retaining his right to assert "his state law rights to challenge a merger or sale that may come out of this transaction," and "his rights to assert any claims arising from rejection of the Shareholder Agreement." *Id.* Philip now concedes that the order rejecting the Shareholders Agreement as well as all of the other orders of this Court issued in this chapter 11 case are no longer subject to challenge.

---

[2] For a detailed description of the intricacies of the Kassover family holdings, see *In re Kassover*, Memorandum Decision and Order Disqualifying Kaye, Scholer, Fierman, Hayes & Handler, LLP., Case No. 98-43124 (Bankr. S.D.N.Y.. March 15, 2000) ECF # 191.

Pursuant to the Plan, the Debtor's shares in GCC were transferred to a Liquidating Trust for the benefit of the creditors of the Debtor's estate.[3] The Plan authorized Gibson, as Liquidating Trustee, to pursue a sale of GCC as a whole, as a means of maximizing value of the Debtor's shares.

In November 2001, Gibson, as Liquidating Trustee, commenced an adversary proceeding (the "Adversary Proceeding"),[4] in this Court seeking declaratory and injunctive relief against Philip for his alleged interference with the Liquidating Trust's marketing and sale of GCC . On November 30, 2001, this Court enjoined Philip from interfering with or obstructing the Liquidating Trust's marketing and sale of GCC.  Philip sought leave to appeal that injunction which leave was denied by the district court, *see Gibson v. Kassover* (*In re Kassover* ), 2002 WL 100640, at * 2 (S.D.N.Y. Jan.24, 2002) and again dismissed by the Second Circuit for lack of jurisdiction. *In re Kassover,* 343 F.3d 91 (2d Cir. 2003).[5]

---

[3] The Liquidating Trust originally had a term of three years from the Effective Date of the Plan which was June 30, 2000. The Trustee has obtained extensions of that term through June 2007. *See,* Order Extending the Term of the Liquidating Trust and the Liquidating Trustee (June 27, 2005) ECF# 443.

[4] Adversary Proceeding No. 01-3569.

[5] The Second Circuit's decision did note that Philip acted to impede the Trustee in selling Garden City by frustrating the Trustee's ability to obtain the company's documents and in other ways:

> In particular, he blocked Insignia [the real estate broker] from physically viewing Garden City's properties, prevented an engineering consulting firm hired by the Trustee from updating Garden City's engineering and environmental reports, and interfered with visits to Garden City's properties by prospective buyers. [Philip] also scared off at least one interested bidder with warnings of potential litigation relating to the company's disposition and made false public assertions that Garden City was not for sale. As a result of [Philip's] obstructive tactics, Insignia was delayed in pursuing a sale of Garden City. During the delay, the real estate market went into recession and the terrorist attacks of September 11, 2001, created serious uncertainties, all of which resulted in a decline in Garden City's value.

*In re Kassover,* 343 F.3d at 93.

In July 2002, the Liquidating Trust reached an agreement with Prism to acquire GCC pursuant to a Settlement and Stock Purchase Agreement (the"Stock Purchase Agreement"), and an Agreement and Plan of Merger (the "Merger Agreement"). The Merger Agreement provided for the Liquidating Trustee to act as Disbursing Agent[6] for the former GCC shareholders and required as preconditions to each shareholder's receipt of consideration that each shareholder present certain documentation and satisfy all monetary obligations owed by each shareholder to GCC. The shareholders of GCC approved the Merger on July 26, 2002.

This Court entered an order approving the Stock Purchase Agreement and the Merger Agreement on July 29, 2002 (the "Merger Order"), and the Merger with Garden City was consummated on August 23, 2002. As part of the Order, this Court held that the 1976 Shareholder Agreement -- which controlled the governance of GCC and the transfer of GCC stock--was invalid *ab initio* under New York law. Philip, who indirectly and directly controlled approximately 22% of GCC, challenged the Sale Order insofar as it ruled the Shareholder Agreement was invalid *ab initio*. Philip appealed the Sale Order which was ultimately affirmed by the Court of Appeals. *See In re Kassover*, 2004 WL 693410 (2d Cir. April 2, 2004).

Under the terms of the Merger Agreement, the surviving corporation, GCC Merger Corp. (a merger subsidiary of Prism), changed its name to Garden City. Gibson, as Disbursing Agent, disbursed full Merger Consideration to all of the GCC shareholders except the Plaintiffs who allegedly did not

---

[6] Neither the Plan nor this Court directed Gibson to serve as Disbursing Agent and she was not acting on behalf of the Debtor's estate in her role as Disbursing Agent. As explained by her counsel at the hearing on this motion, Gibson is being indemnified by Prism or its affiliate.

6

qualify to be paid because of their failure to provide certain documentation and because they had outstanding monetary obligations to Garden City. Allegedly, the new Garden City instructed Gibson to withhold payment based upon the outstanding obligations. After several demands for payment, Gibson disbursed a small portion of the Merger Consideration to the Plaintiffs that had been approved by Garden City.

In October 2004, Gibson, as Liquidating Trustee, moved to amend her complaint in the Adversary Proceeding to include claims against Philip Kassover for his alleged tortious conduct in preventing the disposition of Garden City and for a declaration that Gibson has no liability to Philip Kassover or the Estate of Nathan Kassover for declining to release to them funds that she holds as Disbursing Agent under the Merger Agreement. Garden City, and certain other defendants to the removed State Court Action, moved to intervene in the Adversary Proceeding. This Court deferred decision on those motions and referred the Adversary Proceeding to mediation.[7]

In July 2005, apparently while the mediation process was ongoing, the Plaintiffs commenced the State Court Action in the New York State Supreme Court in which they assert twelve causes of action, none of which seek any relief against the Debtor (who is now deceased) or the Debtor's estate. The Plaintiffs seek recovery of their portion of the Merger Consideration, plus damages and have asserted claims for, *inter alia,* fraud, breach of fiduciary duty, breach of contract and violation of New York Business Corporation Law. Only two out of the twelve causes of action asserted in the complaint are against Gibson in her capacity as Disbursing Agent for failing to pay Philip his portion of the Merger

---

[7] Two days before the hearing on this matter on January 11, 2006, the mediator informed the court that the mediation had not been successful and was terminated.

Consideration. The remaining causes of action allege, *inter alia,* breach of fiduciary duty of care and loyalty against the former Board members of GCC, tortious interference and other related claims against Prism, PVP and Sabella, breach of contract against former shareholders of GCC excluding the Debtor and a claim against Garden City based on certain judgments relating to arbitration awards that Garden City has failed to pay.

The Trustee and Prism filed a Notice of Removal of the entire State Court Action and Plaintiffs now seek to remand it to state court. The Defendants[8] object to remand and move to dismiss the Complaint pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure. The Defendants argue that remand to the State Court is improper because the State Court Action relates to the Bankruptcy Court-authorized Sale and Merger Agreement, which provided funding for the Debtor's confirmed Plan of Reorganization.

**Discussion**

Section 1452(a)[9] of title 28, United States Code ("Title 28") allows a party to remove a pending state proceeding to a district court having bankruptcy jurisdiction. Section 1334 of Title 28 does not expressly limit a bankruptcy court's jurisdiction following plan confirmation, but once

---

[8] With the exception of Rosalie Ericson, all of the Defendants in this action, including Prism, are represented by the Salans firm, the firm that has represented the chapter 11 trustee throughout most of the Debtor's chapter 11 proceeding. At the hearing on this motion, counsel explained that he was acting as "indemnifying counsel" for the Defendant to assure this Court that the cost of defense in this action is not an obligation of the Debtor's estate.

[9] Section 1452(a) allows a party to remove a pending state proceeding if the district court has jurisdiction under section 1334, which provides jurisdiction in cases under Chapter 11 of the bankruptcy code, and matters "arising under [Chapter] 11, or arising in or related to" such cases. 28 U.S.C. § § 1452(a), 1334(a)-(b), *see also* 28 U.S.C. § 1441.

8

confirmation has occurred the courts agree that the bankruptcy court's jurisdiction shrinks. *See In re General Media, Inc. V. Guccione (In re General Media, Inc.)*, 2005 WL 3529148 (Bankr. S.D.N.Y. 2005). Consequently, a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexxus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute. *Id.* As explained below, the Defendants have satisfied neither of these requirements and this Court finds that it does not have subject matter jurisdiction over the claims asserted in the State Court Action.

Section 1334(c) of Title 28 allows for remand of a removed action on any equitable ground.[10] See 28 U.S.C.§ 1334(c)*; Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447- 48 (2d 2005). The factors that courts consider when deciding whether to abstain pursuant to section 1334(c) are virtually the same as those considered in connection with a motion to remand pursuant to section 1452(b). *See Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 17-18 (S.D.N.Y. 2002). *See also Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, 1995 WL 489711 at *9 (S.D.N.Y.1995) (if abstention under § 1334(c)(1) in removed actions, . . . does apply,

---

[10]Section 1334(c)(2) provides:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2).

"then I must consider virtually the same factors as I did in connection with the motion to remand pursuant to § 1452(b)"); *In re Riverside Nursing Home*, 144 B.R. 951, 957 (Bankr.S.D.N.Y.1992) ("[the equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c)."

In seeking mandatory abstention under section 1334(c)(2), a party must show that (1) the abstention motion was timely brought, (2) the action is based upon a state law claim, (3) the action is "related to" a bankruptcy proceeding, as opposed to "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code, (4) the sole federal jurisdiction for the action is federal bankruptcy jurisdiction, (5) there is an action "commenced" in state court, and (6) the action is capable of being timely adjudicated in state court. 28 U.S.C.A. § 1334(c)(2). *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447-48 (2d 2005).

First there is no dispute that the Plaintiffs' motion to remand was timely. Second, the Defendants failed to demonstrate that the claims cannot be timely asserted in State Court. *See Certain Underwriters at Lloyd's v. A.B. Lemmus Global, Inc.*, 2005 WL 3480022 (S.D.N.Y. Dec. 21, 2005) (case remanded where was no basis to find the action could not be timely adjudicated in state court). More importantly, the State Court Action names twelve defendants - none whom are debtors in this court. One of the Plaintiffs is not even a party to the Adversary Proceeding pending in this court. The Debtor is deceased, the Plan was confirmed five and a half years ago, and the outcome of this action will have no effect on the Debtor's estate - if one still exists. *Mt. McKinley Ins. Co. v. Corning Inc.* 399 F.3d at 448 ("the debtor is not involved in this lawsuit, and plaintiffs here seek to adjudicate the rights of non-debtors only. Thus, the adjudication of the claims in this lawsuit will have no direct

10

impact on [the debtor's] bankruptcy proceedings.") At best, the State Court Action is tangentially related to events that occurred during the Debtor's bankruptcy proceeding but it clearly does not "arise in"or "arise under" the Bankruptcy Code and is not core. Cf. *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir.1992) *citing Turner v. Ermiger (In re Turner),* 724 F.2d 338, 341 (2d Cir.1983) (Friendly, J.). (A proceeding is "related to" a bankruptcy case when: (1) the outcome of the litigation might have any conceivable effect on the bankrupt estate; or (2) the litigation has a "significant connection with the bankruptcy case.")*; see also Vornado Realty Trust v. The Stop & Shop Supermarket Co. (In re Bradlees, Inc.)*, 2005 WL 106749 (S.D.N.Y. 2005) (remanding case where "[d]espite a lot of dressing up, this is in essence, . . . a contract dispute that is only tangentially related to the [debtor's] bankruptcy case."). The causes of action asserted in the State Court Action do not invoke rights under Title 11. None of the claims arise under the Plan or require this Court to interpret it and thus, can have no conceivable effect on the chapter 11 case. *See In re General Media, Inc. v. Guccione (In re General Media, Inc.*), 2005 WL 3529148, *7 (Bankr. S.D.N.Y. 2005) ("the plaintiffs' lawsuit lacks a 'close nexxus' to the Plan, and the claims fall outside of the Court's limited post-confirmation jurisdiction."). In fact, at oral argument on this motion, counsel for the Defendants did not even argue that the outcome of this litigation would have any effect on the Debtor's estate.

Moreover, Gibson, is being sued, not in her roles as a chapter 11 trustee or Liquidating Trustee but rather in her role as Disbursing Agent, a role she took on after the Plan was confirmed and for which she was apparently compensated (or will be) by third parties. As Disbursing Agent, Gibson was disbursing the proceeds of the GCC Sale not the proceeds of the Debtor's estate. The outcome of the

11

claims against Gibson as Disbursing Agent can have no effect on the Debtor's estate or the Liquidating Trust. On the other hand, the Adversary Proceeding before this court involves claims of the Debtor's estate against Philip Kassover.[11] To the extent that the Debtor's estate still owns those claims, those claims can be timely, and separately, adjudicated now that mediation has concluded and will not be affected by the claims in the State Court Action.[12]

**Conclusion**

Accordingly, for all of the reasons set forth above, the motion to remand is granted. The motion to dismiss is likewise remanded.

SUBMIT AN ORDER IMPLEMENTING THE FOREGOING.

Dated: New York, New York
January 12, 2006                    /s/ Burton R. Lifland
                                    United States Bankruptcy Judge

---

[11] The claims against Philip in the Adversary Proceeding arose prior to the sale and merger and thus are distinguishable from the claims or defenses that may be asserted by the Defendants in the State Court Action.

[12] A review of the Trustee's motion to amend her pre-existing Adversary Proceeding complaint (see paragraph 23 of Defendant's Memorandum in Opposition to the Motion to Remand) reveals that, with the exception of the tortious interference cause of action for damages asserted against Philip, the amended requests for additional relief can be characterized as essentially responses to the Plaintiffs' removed complaint in the State Court Action and are assertable as defenses in that Action. Accordingly, it would appear that the Trustee should be authorized to amend her complaint only to the extent that the amended complaint amplifies the pending tortious interference claims asserted against Philip on behalf of the Debtor's estate. Likewise, Garden City (and others) have moved to intervene in the Trustee's Adversary Proceeding against Philip (see paragraph 23, *supra)*. Now that the mediation has been terminated, these motions shall be restored to the calendar to be disposed of under Adversary Proceeding 01-3569.